May it please the court, my name is Lewis Gordon, I'm counsel for the petitioner. I was counsel at the hearing before the immigration judge and before the Board of Immigration Appeals. That's unusual. And I'm here today to try to complete what we started in 2000, that's to get asylum for a petitioner who has a serious problem. Now, there's no credibility issue in this case. And the immigration judge found that the petitioner had a clear probability of persecution in Iran. On page 58 of the transcript, he notes that he would be inclined to grant asylum. Page 59 of the transcript, he says that under the old regulation, he would have adopted the position we set forth in court, but he can't because of the new regulation under 208.158 CFR, which he found the petitioner was firmly resettled. Now, I'm going to, since you've given me 20 minutes and not 10 to argue this case. You don't have to take it all. No, I'm going to. I just want to go through some facts and I appreciate the extra time. The petitioner is a native of Iran where his father was the mayor of a city called Kashmar. After the fall of the Shah, the family was persecuted. The petitioner spent two years in prison in Iran and he was forced to watch the execution of prisoners, being told that his turn would come next. Counsel, you can assume that we're familiar with the facts of the case. I understand. And I'm not going to go through a whole long rendition. I just want to state a few points. Well, it was made clear that he cannot be sent back to Iran. Isn't that correct? Well, he cannot correct, Your Honor. However, in Germany, and if we look at the... Counsel, why don't you just tell us why he wasn't firmly resettled in Germany? Sure, Your Honor. The German government itself told him that to get German citizenship, he had to go to the Iranian consul and renounce his Iranian citizenship. And he did so. And he did so, even though he told them that this was a dangerous situation, but they told him he had no choice to get the German citizenship. And he did so, and that launched a campaign, which even the IJ referred to at one point as a campaign of terror against him. By whom? By Iranian agents in Germany. Now, looking first at this firm resettlement argument, the... So, is it your argument that he was not firmly resettled in Germany because he was subjected to a harassment campaign by an Iranian? No, he's not firmly resettled because there's a restriction under the German law at that time which required him to, in order to get German citizenship, he had to renounce his Iranian citizenship. So, what's your best case authority for that proposition, that one is not firmly resettled if one is required to comply with the host country's law for citizenship? What's your... If we look at the regulation itself under 208.15, the first part talks about citizenship, but under section B, if it says substantially and consciously restricted by the authority of the country. Now, if we say it's not firmly resettlement, and he doesn't go to the German, he doesn't go to the Iranian consul and renounce that citizenship. So, we have a situation where he can't be a citizen of his host country. He's perpetually... But does he have to, as Judge Rawlinson asked you, does he have to become a citizen of the host country in order to be resettled, firmly resettled, under our law? He doesn't have to be a citizen of the host country to be firmly resettled, but the... If we're... The IJ was denying on the basis of reading that regulation, and that regulation specifically says an offer of permanent residence or citizenship, and then under section B says, talks about consciously restricting or substantially restricting, and it's the German government that has substantially restricted him because of that regulation. He was doing everything he could to renounce his Iranian citizenship, correct? Correct. But Germany doesn't recognize that renunciation, is that what you're telling me? No, Germany... What happened, what happened was then the campaign of harassment started. So, he left before the process would be completed? He left, yes, he left. Yes, he left. But he was in Germany for 10 years? Correct, Your Honor. Married a German citizen? Yes. Held a job? Yes. Owned a car? Yes. Owned a house? Yes. And he wasn't firmly resettled? Well, he wasn't firmly resettled because of this law which the German government itself has repealed, which is of no help to him, but because of that rule, that we would argue that he wasn't firmly resettled because of that. Now... Okay, assuming we disagree. Okay. Assuming we disagree with your argument and say that your client was firmly resettled, what's your next argument? Okay, our next argument is that there's a well-founded fear of persecution in Germany that based on... Based on... By the German government? No, by the Iranian agents that are operating inside Germany. So you would have to be saying that the German government could not or would not control them? Well, look at our record. That's the point that's very important here. There are police reports, page 227, page 235. There's police reports. There's a letter from a member of the German parliament about the situation. The petitioner's wife, Pastor Boy, her late uncle, had been the Minister of Justice in the German government during the Willy Brandt regime. She had asked him for help. There was... They were unable to stop this campaign, which went on for over... For a year, and of constant death threats and damage to property. Later their mailbox and their mail was broken into. The cars were damaged a couple... Were damaged on several occasions. The German government did not take action. And in the record at page 331, there's the Los Angeles Times report, which notes that the German bureaucracy is very slow, even after 9-11, while our investigators had arrested hundreds of people. They had arrested very few. Counsel, is it the fact that the German authorities did not take action, or the action that they took was not satisfactory to your client? Well, they took minimal action, which is tantamount to not really taking action. They went through some formal procedures. He made reports, but they did not protect him. But your client did not give the police names of any suspects, is that correct? That's correct. So what is it that... Except that he did tell them what had happened with the Iranian consul. What is it that the German authorities should have done that was not done? Well, they may have launched a stronger investigation. They could have assigned security to them. His wife, after all, is a prominent pastor of a 5,000-person congregation in Hamburg. But what case authority are you relying upon to support your argument that failure to provide personal security constitutes an unwillingness or inability to stop persecution? Well, if we look at Navas v. INS or Aguirre-Cervantes, we know that... What's your very best case authority for the proposition you just argued? Magoyan v. INS. All right. But basically, these people were subjected to a long-term amount of death threats, harassment, and they went to all the channels that they could go to, and they were unable to be protected. So what is the answer to this problem in the mind of the petitioner and his wife? He had to leave Germany because they felt his life was not in danger, that the German government could not protect them. Now the last point that I want to make goes to the due process argument in this case. The Board of Immigration Appeals issued a summary of affirmance without opinion, and they list in their own regulations criteria to issue a written decision. But don't we give your client due process when we look at the IJ's decision? I'm sorry, Your Honor? I say, don't we, and isn't there authority in the circuit for the view that streamlining is okay, that we can, as long as we focus on the IJ's decision? Streamlining is okay, and it's not every... How is this different from that? It's different because this particular case, the IJ granted withholding, we're presenting a novel factual situation to the precedents at hand, and the board shouldn't... If you're going to have any effective review, the board should at least look at these issues. It's different than any average case. There is a credibility finding in our favor. There's a grant of withholding of removal in our favor. So it's different than the average situation. Counsel, when I ask you for your best case authority for the proposition that failure to assign personal security to a claimant indicates an inability or unwillingness of the authorities to prevent persecution, you gave me Magogian versus INS. Right, I cited three cases in that brief. I asked you for your absolute best case, and you said Magogian. Magogian would be the... Could you point me to the language in that case that you're relying upon? When the government... I'll do that on rebuttal. Could you find the language that you're relying upon? Okay, thank you. May it please the court, once again, this is Earl Wilson on behalf of the government. Your Honor, I think the evidence in this case here is ample and substantial and uncontroverted with respect to firm resettlement. And the fact is the petitioner in this case here received asylum in Germany. He lived there for 10 years. He had virtually all the rights, freedom of travel, work, property. In essence, he would be what we would call in this country a lawful permanent resident. He had everything except citizenship, didn't he? Everything except citizenship, which is what individuals in this country here get when they become LPRs. And people live in this country here for the rest of their lives and never become citizens. But the fact... Let's assume for the moment that he was permanently resettled, but that conditions have made him very unsafe in Germany because the Iranian operatives are after him and that Germany is not able to control them. You know, we've got people in this country, the terrorists, that we're not able to control. But he's got all of these incidents that show that he is unsafe in Germany. Should we, on that basis, find that he has a reasonable fear of persecution or torture or death if he were returned to Germany? Your Honor, first thing, if he's ineligible for asylum, he has to now meet a very high burden. It's not just well-founded fear. It's a clear probability of persecution. So I just want to make that, because it's withholding at that point. That's for withholding, but... That's all he can get. He can't get asylum. Why? Because the firm resettlement is a bar to asylum. He can't get asylum. Demonstrating that I have a well-founded fear is not going to get you there because that's the standard for asylum. Counsel, if he renounced his citizenship from Iran and he's stateless, he can get asylum from Germany. Well, I'm just saying, the way the law is, if you find that someone is firmly resettled, it's a bar to asylum. But now he's unsettled. Well, but again, the question, Your Honor, was that if we find that he's firmly resettled, if you find he's firmly resettled, that takes asylum off the table. And the immigration judge did point this out in his decision. You take asylum off the table, all you can get is withholding of removal and protection under CAT. So now we should be looking at a probability and all these things were happening to him in Germany. Aren't they going to happen again if he goes back? Well, I just pointed out that there's a different standard. But I get really to the facts of his case. What happened here is that he was never arrested. And I'm not minimizing it. His bicycle tires got slashed and his car allegedly got damaged. But it's just not a... Death threats? And he allegedly got some death threats. And the mail was broken into? Yes. What else? Anything else that happened? I'm assuming that all of those things happened. What I will say that he then has to demonstrate that the people who are doing all of this are people who the government of Germany cannot control. On this record, he has not shown that. He just has... Bear in mind, he's never said to the German government, this is the person who has done this to me. But he says he doesn't know who did it. He just knows that they have to be Iranian operatives. Well, he doesn't know who does it, but he's speculating that it's Iranian operatives. And that's the first speculation that he has to make. And then the government is trying to do their best. He doesn't know who does it, but it's trying to figure out who is doing it. And admittedly, in every country, not all crimes are solved. The question is, is the government unwilling to control these individuals? I'm sure that they might be willing to control them, but are they able? I think that's the other half of it, isn't it? But there's no question or evidence that they're unable to control them either. I mean, the fact that we have 9-11 does not mean that this government is unable to. This petitioner has to make a showing. What is the proof in this record, apart from the petitioner's testimony? I realize that can be necessary proof. Is there any other additional proof that the damage caused in Germany was caused by Iranian agents as opposed to just ordinary thugs? No, Your Honor, because that's part of the problem in this case. He doesn't know who. He's speculating that it's Iranians. He has not been able to identify anyone. He's saying that it is. Subjectively, he could be right, but there's no objective evidence to back that up. But even if it is... There's a timing. This happened immediately after he went to the Iranian embassy and renounced his citizenship. So I think we can infer there's some connection. I don't think that's an inference that's compelled, Your Honor. That could just be timing. And I'm not suggesting to you that that's a wrong inference. I'm just saying to you that's not a compelled inference. Often that's the argument that's made by everybody. You know, the timing is, and it must be. That's not an analogy that flows automatically. Well, the IJ doesn't question that that is the case, does he? Well, no. The IJ says that there's no evidence, and again, it's petitioner's burden, that the government cannot control or is unable... Bear in mind, the government has given this individual here asylum in Germany. And there's no evidence that's in this record that shows that the government cannot control assuming that these are Iranian dissidents. There's no evidence that the government can't control. The petitioner's argument seems to be that the government of Germany acts much slower than the government of the United States. But slowness is not the same as unable or unwilling. And at this level, there has to be evidence, at best, that the record compels a finding that the government of Germany is unable or unwilling to control individuals who have not been identified by the petitioner, but there's this amorphous group out there, and there's just simply no evidence to compel a finding in petitioner's favor on the basis of this record. The fact is, petitioner was firmly resettled. The fact is, there's evidence here that he allegedly suffered harm, but there's absolutely no evidence that the government of Germany is unable or unwilling to control. And there's no evidence that compels a finding that on this record, petitioner is likely to suffer persecution or is likely to suffer torture. I would point out with respect to the torture claim, he has to also show that the alleged torturers are people who are agents of the government. There's absolutely no showing of that on the record. With respect to the due process claim, Your Honor, I think that there's absolutely nothing novel about the claim here. Much of the brief focuses on firm resettlement, and the fact is, there's ample evidence of firm resettlement. The other issue is whether there's clear probability and a likelihood of torture. On this record here, there's really nothing remarkable about it. There is certainly no evidence in this record that makes it a complicated case with respect to whether the government of Germany can control people who they really don't know. And there's certainly nothing complicated about the issue of torture. There's no allegation that the government of Germany is involved in the torture, assuming that there's torture. So I think on this record, there's simply this is really just a standard case. There is nothing novel. There's no case law that suggests that this is a difficult issue for the Court. And the IJ's decision is clear, and it provides a basis for this Court to conduct its review on this case. Under the regulations, if there is an issue as to which there's no precedent, is the BIA obligated to do an opinion? I don't believe so, Your Honor. I mean, every case is factually dissimilar. I would imagine that there's conceivably a fact in every particular case that makes it a little bit different from every other case. I'm just asking really as a matter of information to us, if there is a novel issue, are they required to  that it's a novel issue, do they have to in that circumstance do an opinion? I don't think so, Your Honor. It may be a new issue, but it may not be substantial. But in any event, this Court has before it, will have before it, the IJ's decision. And so to the extent that it's a novel issue that this Court wants to look at, the issue is still the IJ's decision. It provides a basis for review, and the Court can conduct its review based on the IJ's decision. Counsel, in this case, the IJ addressed asylum claims from both Iran and Germany. Did not adopt your argument that it's a withholding issue from Germany. So what do we do with that? It did, Your Honor. It addressed withholding from Germany and also from It addressed asylum from Germany as well. Well, the asylum is barred by the statute. And to the extent you know, I read the case law that says and I think that excuse me a second. So that's why that's why Judge Fetcher's question intrigues me because it appears that the IJ permitted an application for asylum from two countries. On page 64 of the administrative record it says that it is hereby ordered that the respondent's application for asylum from Germany be denied. Right, that's but that's different than saying and the reason for that is because he's firmly resettled. No, that would be the asylum application from Iran. That would bar a firm resettlement. A firm resettlement would bar that but the asylum application from Germany was addressed. Well, I will direct the court to page and maybe that IJ didn't need to but I will direct the court to page 59 at the bottom. The law now states that a grant of asylum shall not be given to an individual who is firmly resettled in another country prior to arriving in the United States. That addresses the request for asylum from Iran. That addresses the asylum from Iran. Now, I see what you're saying and I misspoke. If he's arguing that he has a well-founded fear in Germany then yes, Your Honor, he can demonstrate on the facts of this particular case that separate apart from whether he's barred from getting it in Iran he has a well-founded fear in Germany and in that case I did misspeak but the record in this case also doesn't demonstrate that he has a well-founded fear. He certainly doesn't have I just don't know procedurally how you get there. Procedurally, I don't know how you get to an asylum claim from Germany. That's what bothered me is because you can only request asylum from your native country which in this case was Iran. And so, procedurally, how do you get to asylum claim from Germany? Your Honor, that's a question that you know I would say this and I didn't prepare for it in this case but I do know that when you look at the statute it sometimes gets a bit confusing in that area and I'm not sure that it's entirely expressly in the statute but I haven't looked at it but a lot of times when we look at the bar I think the service has traditionally looked at as the bar from the side you can't get asylum from that country if you firmly restudy and I think the analysis is that separate for example if you can demonstrate that you know you firmly resettled in Germany and then all of a sudden the German government has decided now that they're not they're going to persecute Jews for whatever reason and it's clear on the record we don't think that the asylum bar the firm resettlement bar would bar you from making a separate showing again once you firmly resettled essentially you start over again and now you're in this country and if you can make a separate showing in that country that Germany is persecuting you on behalf of your Jewish status then that would be different but you are not a native huh you are not a native of Germany that's true but you're telling me huh what you are telling me in so many words is that the agency has rewritten the statute no I didn't I didn't say that your honor I said that I really do need to do a little bit more work on the analysis and I'd be more than happy to look at it I know it gets a little bit confusing I've got to go through the statute a little bit more to tell you how we get there the problem I have is the IJ made the ruling the IJ ruled on asylum from Germany and that's why when Judge Fletcher asked the question about a novel determination my feeling is that perhaps the BIA or the IJ should have an opportunity to give a considered decision on this issue because I don't think this decision is considered I don't think it went through the procedural hoops that you have to go through in order to consider an asylum application from a second country well your honor before we close the petitioner out no on that basis they'll have to go back no but the reason why you won't have to do that I think you'd have to reach that issue if the board said that you're ineligible and he would make the argument that by the way I'm eligible and you didn't consider that issue what the board and the IJ did is they assumed that he's eligible so you have to take that in face value that he has gotten the benefit of the analysis I mean the court what you're asking us to do is assume he's eligible not go through the procedural and say that he even if we assume that he's eligible he didn't meet the criteria to get asylum from Germany I think so your honor and again perhaps we could what if we were to decide yeah he is eligible for asylum you'd say we still can't grant it what would you then because on the Ventura if we disagree we couldn't just say well I guess since that issue is you know we didn't make the argument and perhaps  we didn't make that in particular case but I don't think the court can say that as a matter of law I mean the court would say that the issue is that the issue is that assuming that he's eligible he's met the standards in this particular case but I don't think that the court can make a pronouncement that says as a matter of law under these set of facts somebody is or isn't and I guess to be candid the assumption is in place we would never go beyond saying that he was eligible and then send it back but right but I mean the narrow issue that Judge Rawlinson was addressing is not in this case here but assuming that he's eligible if this court finds that he meets his burden then the court would take the assumption and decide the case but in this case we think that he's gotten the benefit of the bargain but in any event Well I understand what you're saying but if we were to find on these facts that he has a reasonable fear you're saying that we should assume that we could go ahead and grant eligibility? Well I would say that the court need not decide the legal question of whether the court would just assume as in every case where there is an assumption that he's eligible for it I would be more than happy to brief the issue as to whether as a matter of law he would be eligible for asylum from Germany but I didn't do that because that didn't come up in the case Well it did come up in the case because the IJ ruled on the asylum from Germany issue but it didn't come up in the sense that you know the narrow issue of whether there was an assumption in the case exactly right but I mean the narrow issue of whether or not he's entitled to apply for absolutely and I could brief that issue that narrow issue if the court would like but we'll let you know if we need a different briefing but for now let me just understand your position is assuming that he's entitled to apply for asylum from Germany he didn't meet the criteria for eligibility for asylum yes your honor on this record here either on a well founded fear basis or a clear probability basis or a likelihood of future torture basis thank you very much your honors your honors I'd like to point to     who's a professor at Cal State Northridge who notes that there's a declaration from Dr. Mehran Kemrava who's a professor at Cal State Northridge and one of the reasons supporting the petitioner's fear of persecution in Iran is that he renounced his Iranian citizenship and that record would be there at the Iranian embassy in Germany so there is a link between what he did and the beginning of this campaign against him and the renouncement was done in March of 1998 and the first incident started shortly after in April of 1998 I also wanted to point out he didn't have to go all the way to Tehran to have that connection made I mean he applied to the Iranian council in Germany that's correct but the council was saying that there is no evidence in the record as to who this was and I think it's pretty obvious from the record as to from the pattern of what's going on there what was the time lapse the time between he renounced his citizenship and the first incident well it was done in March 98 the renouncing and there's a police report in the record from April 5th of 98 so it's very close now there's also on page 219 a letter from the international league for human rights talking about the activities of Iranian agents in Germany and their activities against Iranian dissidents but of course then we have to determine whether or not those activities amounted to persecution which is an extreme concept and as opposing counsel indicated not every incident of harassment rises to that level that's true but we're not talking about one incident we're talking about a level of incidents that went on for during a year we're talking about death threats we're talking about the petitioner's wife picking up the phone and hearing threats in a foreign language we're talking about a situation where she's a prominent pastor and who's on television and it's a in certainly under these circumstances it's a dangerous situation now I wanted to under McGowan as I cited in my brief that when the government failed to investigate the murder of the applicant's wife I'm on page 13 in my opening brief what in the case what page of the case I don't have the case in front of me at the end of the quote it should say what the citation oh I believe it's at page 1036 in McGowan read just the language counsel holding that when the government failed to investigate the murder of the applicant's uncle an amnesty international indicated the government  to violence towards and persecution of religious minorities the government was unable or unwilling to control the persecutors has there been a failure to investigate is to actually undertake something something more serious that page doesn't talk about investigation it says the most extreme act of violence experienced by family was the murder of her uncle while it is true that the death of one family member does not automatically trigger a sleeping entitlement to asylum eligibility for all members McGowan has shown more than mere isolated violence it doesn't say anything about investigation that's why I was asking you for the language you're relying upon well I would ask your honor then to do a further briefing on it go ahead proceed with your argument we'll let you know if we need additional briefing so basically when the threats that came to the petitioner were extensive they went on for a long period of time just one incident of having your bicycle slashed is not persecution but that's not what we're talking about we're talking about a sustained situation over a years period we're talking about a number of police reports requests to the German parliament for help requests to a former minister of justice and at that point the respondent leaves Germany he doesn't leave after the first incident or after a month he made a serious effort to try to get help from the German government under these circumstances I believe that he's eligible for asylum as far as the issue of the legalities of the of applying for asylum from a third country that was not an issue in the case the government's attorney did not reserve appeal on that issue so I believe that that it shouldn't be an issue and I thank you for your consideration thank you thank you thank you to both counsel this case is submitted for decision by the court and that completes our calendar this court is recessed adjourned all rise the court is recessed adjourned The court is            between nine and eleven o'clock eastern time between nine and eleven o'clock eastern time between nine and eleven o'clock eastern
judges: Fletcher Hansen, Rawlinson